[Crim. No. 1107. In Bank.—June 1, 1904.]

Ex Parte G. B. GERINO, on Habeas Corpus.

PHYSICIANS AND SURGEONS — BOARD OF MEDICAL EXAMINERS — STATE AGENCY — CONSTITUTIONAL LAW.—The act of February 20, 1901, regulating the practice of medicine and surgery, providing for a board of examiners, to be elected by various medical societies, is not unconstitutional. The board when so constituted, is not the agent of the medical societies, but constitutes a state agency for the regulation of the practice of medicine and surgery.

ID.—POWER OF LEGISLATURE.—The legislature has the power to establish the offices held by the board of medical examiners, and to declare the manner in which they should be chosen, and they, not being officers established by the constitution, had the power to delegate their appointment to any persons or class of persons.

ID.—SPECIAL PRIVILEGE OR IMMUNITY—PUBLIC DUTY.—The act providing for such appointment is not a special law granting any special right, privilege, or immunity to the medical societies, in contravention of subdivision 19 of section 25 of article IV of the constitution. The societies only discharge a public duty for the benefit of the state; and the board of examiners are sworn officers whose duty it is to act impartially, for the benefit of the people, and not in the interest of any school of medicine or medical society.

ID.—HABEAS CORPUS—VALIDITY OF APPOINTMENT OF DE FACTO OFFICERS.—Irrespective of the validity of the appointment of the board of examiners in the mode provided for in the act, the right of *de facto*

members of the board to discharge the duties of their office cannot be inquired into upon *habeas corpus* by one who is in custody charged with practicing medicine without the certificate provided for in the act. If such mode of appointment were invalid, it would not affect the validity of the statute as a whole.

ID.—PROVISION FOR MEDICAL DIPLOMA—STANDARD OF SCHOLARSHIP.—The provision of section 5 of the act of February 20, 1901, that as one of the steps toward procuring the certificate required by the act, the applicant must produce a diploma issued by some legally chartered medical school, the requirements of which shall be in no particular less than those prescribed by the association of American medical colleges for that year, is not to be construed so as to require different schools or colleges of medicine to have the same course of study and other requirements prescribed by that association, but only that there shall be an equal standard of scholarship. If that association belongs to any one school of medicine, the provision for the standard of efficiency is not arbitrary or unjust.

ID.—POWER OF BOARD TO MAKE DISCRIMINATIONS—SEPARABLE INVALID PROVISION.—The provision at the close of section 5 of the act, empowering the board in its discretion to discriminate between persons holding certificates from medical examining boards of other states, by subjecting one to examination and admitting another without examination, if invalid, would only make it the duty of the board to require the examination of all applicants; and the provision is a separable one, the invalidity of which does not affect the general plan or operation of the law, or its remaining provisions.

WRIT OF HABEAS CORPUS to the Chief of Police of the City and County of San Francisco.

The facts are stated in the opinion of the court.

Garoutte & Goodwin, for Petitioner.

Otto tum Suden, R. B. Carpenter, and Beverly Hodghead, *Amici Curiæ*, for Petitioner.

William M. Maguire, William C. Tait, and Charles S. Wheeler, for Respondent, and for State. Board of Medical Examiners.

SHAW, J.—The petitioner is in custody on the charge of practicing medicine without a certificate from the state board of medical examiners, established by the act of February 20, 1901, for the regulation of the practice of medicine and surgery. (Stats. 1901, 56.) By his petition in *habeas corpus* he

asks to be released on the ground that the statute is unconstitutional. The act establishes a state board of medical examiners, which is empowered to issue to persons who pass, or have passed, a satisfactory examination a certificate which shall authorize such persons to practice medicine and surgery in this state. It makes it a misdemeanor for any person not having such certificate to engage in the practice of medicine or surgery. It is conceded that the legislature has the power to enact laws establishing the conditions upon which persons shall be allowed to practice the profession of medicine within this state. The inquiry before us is whether or not this power has been constitutionally exercised. Several provisions of the act are assailed, and each is claimed to be so essential to the general purpose and object of the law that if it is unconstitutional the whole law, including the part defining the offense in question, must be declared invalid.

1. The act provides, with respect to the membership of the board of examiners, that "five members thereof shall be elected by the Medical Society of the State of California, two members thereof by the California State Homeopathic Medical Society, and two members thereof by the Eclectic Medical Society of the State of California." This, it is claimed, violates section 21 of article I of the state constitution, declaring that no class of citizens shall "be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens," also section 11 of article I, that "all laws of a general nature shall have a uniform operation," and subdivision 19 of section 25 of article IV, forbidding a special or local law "granting to any corporation, association, or individual any special or exclusive right, privilege, or immunity."

The legislature has power to establish offices in addition to those created by the constitution itself. Section 4 of article XX provides that " . . . all officers . . . whose offices or duties may hereafter be created by law, shall be elected by the people, or appointed, as the legislature may direct." This gives the legislature power to declare the manner in which officers other than those provided by the constitution shall be chosen. Such officers may be appointed by the legislature itself, or the duty of appointment may be delegated and imposed upon some other person or body. (*People* v. *Provines*, 34 Cal. 541; *In re Bulger*, 45 Cal. 559.) There is no limita-

tion to any particular person or class of persons upon whom
alone the legislature may impose this obligation.

In our opinion the power to appoint officers in such cases
is not one of the rights or privileges contemplated by the pro-
visions of the constitution upon which the petitioner relies.
It is more in the nature of a duty than of a right or privilege.
The rights and privileges referred to in those guaranties and
limitations must be something for the individual benefit or
advantage of the person or association upon which they are
conferred, and not the power to perform a public duty for the
benefit of other persons or of the public.   In exercising the
power in this particular case the societies mentioned in the
law are acting for the benefit of the state and the people at
large.   The power of the state to constitute such a board, and
to impose restrictions upon the right to practice medicine, to
be enforced by the board, could not be upheld at all if it were
put upon the ground that in so doing the state is acting for
the benefit of any one or all of the medical societies or schools
of medicine existing in the state.   The power rests entirely on
the theory that such regulations are for the general welfare,
and, specifically, to protect people from the arts of quacks
and pretenders and from the mistakes of incapable prac-
titioners.   The board of examiners, when constituted, is not the
agent of the medical societies which appoint its members, and
its functions are not conferred or designed for the benefit of
those societies or either of them.   The board constitutes a state
agency for the regulation of the practice of medicine and sur-
gery, and it must discharge that duty under oath and impar-
tially for the benefit of the people, and not for the promotion
of the interests of any school of medicine or medical society.
In *Ex parte Frazer*, 54 Cal. 94, substantially the same ques-
tion was raised in the argument, although it is not discussed
at large in the opinion, and the court, speaking of a like power
of appointment, says: "The assumption of the power by these
individuals or societies would be the assumption of a public
duty, and the performance of the duty simply would not be
profitable or beneficial to them, as societies."   (*Ferner* v.
*State,* 151 Ind. 249;  *Wilkins* v. *State,* 113 Ind. 514.)   The
societies named, by receiving this power of appointment, are
constituted agencies of the state to perform a part of the
duty pertaining to the sovereign power of the state, and they

are not in that respect the recipients of private rights or privileges. (*People* v. *Provines,* 34 Cal. 541.)

The decisions in *Britton* v. *Board of Commissioners,* 129 Cal. 341, and *Murphy* v. *Curry,* 137 Cal. 485, are not applicable. They hold that when the legislature undertakes to prescribe rules and conditions under and by which alone citizens, either individually or collectively, may freely exercise political rights such as the right of suffrage, or the right to become a candidate for office at a general election, it must make rules and establish conditions which shall give to every citizen, as against any other citizen, equal facilities for the exercise of such rights, and that, if any privileges are given to any party or association of citizens to have the names of its particular candidates spread upon the official ballot, the same privileges must be given to all parties and associations similarly situated and having like objects and purposes. The law here in question does not deal with political rights held by citizens generally, nor with any existing right of these medical societies. The societies were presumably not organized for the purpose of appointing members of examining boards, and neither of them possesses any such right or power independent of the law conferring it, nor is this power given them in furtherance of the exercise of any right or power which they possessed before. It is, as before stated, a simple public duty which they are empowered to discharge as a political agency of the state. The legislature may distribute such powers according to its will under section 4 of article XX, untrammeled by the restrictions in other portions of the constitution respecting the granting of rights and privileges equally to all of the same class. It may be true that in making these appointments each medical society will choose persons who believe in the school of medicine of which its members are composed. This, however, does not render the law unconstitutional. The board when appointed must act equally for the benefit of all applicants, and impartially with respect to each, regardless of the school of medicine to which they belong. Their official oath so requires, and there is nothing in the act which authorizes or permits them to do otherwise.

We have thus considered and decided the validity of the method of appointing the members of the examining board, for the reason that both parties have fully discussed the sub-

ject, and certain persons, claiming to represent the state in a *quo warranto* proceeding to test the right of the board to hold that office by virtue of such appointment, have appeared as *amici curiæ,* and argued the proposition from their standpoint. We think; however, that this objection does not involve the constitutionality of the act as a whole. The law establishes an examining board and prescribes its duties and powers, and the power of the legislature to establish such board is not disputed. This being the case, it is clear that, even if the method provided in the law for the appointment of the members is invalid, the other provisions of the law would stand unaffected. (See cases hereinafter cited.)   There would then be a legal office established without any specific provision for the appointment of any person to fill it, and the vacancy thus existing could be filled by appointment of the governor.   (Const., art. V., sec. 8; *Quigg* v. *Evans,* 121 Cal. 551; *People* v. *Edwards,* 93 Cal. 156.)   But as it would be a legal office, it could be filled by a *de facto* officer, and in that case the validity of his appointment and his right to hold the office could not be questioned in this proceeding in *habeas corpus.*

2. The other objections relate to the construction and effect of section 5 of the act.   It begins by requiring that every person practicing medicine or surgery in the state must have the certificate of the exmining board as therein provided.   It then enacts that, as one of the steps toward procuring a certificate, the applicant must produce ''a diploma issued by some legally chartered medical school the requirements of which medical school shall have been, at the time of granting such diploma, in no particular less than those prescribed by the Association of American Medical Colleges for that year.''   The provision fixing the standard of this association as a test of the character of the medical school issuing the diploma is, it is contended, invalid,—1. Because, it is said, the association is composed of colleges teaching only the regular or allopathic system of medicine, and therefore it would place it in the power of that school of medicine to fix the standard that would put the other schools at a disadvantage, and this makes the provision an unjust and arbitrary discrimination against all of the other schools of medicine; and 2. Because it delegates to the association the power to fix this standard, a power which,

it is claimed, can be exercised only by the legislature itself, and, moreover, it is in effect the adoption of a standard that may vary from year to year, whereas the provisions of law, it is said, must be fixed, definite, and certain.

A diploma is required because its possession indicates that the applicant has, to some extent, prosecuted the studies necessary to qualify him to follow the medical profession. It may be that there are medical colleges which require little preparation on the part of their students as a condition to the issuing of a diploma. The provisions of the law imply that there are such. If the diplomas of such colleges were made sufficient to admit an applicant for a certificate to an examination, the number of that class of colleges would, doubtless, increase. It was therefore necessary, in the judgment of the legislature, to prescribe a standard of scholarship, to be maintained by the colleges whose diplomas the board should be authorized to accept. The law on this point is not to be construed so as to require these colleges to have the identical course of study and other requirements prescribed by the association. The test is, that the requirements of such college shall be "in no particular less than" those prescribed. That is to say, the standard of scholarship required of its students shall be equal to the standard required by the association. It need not be the same course of study, nor the study of the same text-books, nor the attendance for the same length of time; but it must be such as requires of the student a degree of proficiency in the studies necessary to prepare him for practice equal to that which would ordinarily be produced by the requirements prescribed by the association. Whether or not the Association of American Medical Colleges is composed of those only which teach the allopathic branch of that profession we cannot say, but admitting it to be so, we cannot say that there is in this provision of the law, thus understood, an arbitrary or unjust discrimination against other schools. Surely they would not claim the right to have their adherents admitted to practice the profession upon a less degree of proficiency in the preparatory studies than is required of those in the regular school.

It being proper for the legislature to demand some standard of efficiency, as we have seen, we think it is equally within its powers to declare that it shall be the same as that prescribed from time to time by an association composed of colleges de-

voted to the work of preparing persons for the profession. Evidently the standard of proficiency in scholarship as a preparation, and the particular studies necessary to secure a fair preparation, must change as the discoveries in natural science open new fields of investigation and suggest or reveal new curative agencies. The legislature cannot successfully prescribe in advance a standard to meet these new and changing conditions. The method adopted appears to be sufficiently definite to enable all colleges to reach the required standard when in good faith they desire to do so. The law is as fixed, definite, and certain in this respect as the nature of the subject and the object to be attained will permit, and we do not think it should be held void because it adopts the standard fixed from time to time by those who, it will be presumed, are the most eminent in the profession which it attempts to regulate, and who should be the most interested in maintaining the highest degree of professional proficiency, skill, and training.

3. The next objection is, that under the guise of authority to exercise discretion the examining board is given power to make arbitrary and unjust discriminations between persons holding certificates from medical examining boards of other states by subjecting one to an examination and admitting another without examination. This objection is directed to the last paragraph of section 5 of the act, which provides, in substance, that in the case of a person holding a certificate from another state examining board which has required the production of a diploma or license of equal grade to those required by the act, and has also required the holder to pass an examination as strict as that required by our own board at the time, such person may, in the discretion of the board, be admitted to practice without further examination. It will be seen that every person within this class must have a diploma or license such as the act prescribes, and therefore must be eligible to examination here, if the board requires it. If the provision giving the board discretion to admit without examination is held unconstitutional, the effect would be that all applicants must submit to examination as provided in the act. The act shows clearly that the main purpose is to admit no one to practice who has not passed such an examination, and the only effect of the last paragraph is to permit in some cases

the substitution of the examination of another state board for that of our own. A law which is unconstitutional in part only is not to be held wholly void, unless the invalid portion is so important to the general plan and operation of the law in its entirety as to reasonably lead to the conclusion that the law would not have been adopted if the legislature had perceived the invalidity of the part so held to be unconstitutional. If the law is separable, so that the general object can be attained without aid from the part that is void, the other parts of the law will be upheld. (*Ex parte Frazer*, 54 Cal. 94; *People* v. *Perry*, 79 Cal. 105; *People* v. *McFadden*, 81 Cal. 496.) "If an independent provision, not in its nature and connections essential to the law, be unconstitutional, it may be treated as a nullity, leaving the rest of the enactment to stand as valid." (*McGowan* v. *McDonald*, 111 Cal. 65.[1]) Such invalid provisions "will not vitiate the whole act, unless they enter so entirely into the scope and design of the law that it would be impossible to maintain it without such obnoxious provisions." (*People* v. *Hill*, 7 Cal. 103; *People* v. *Burbank*, 12 Cal. 393; *Mills* v. *Sargent*, 36 Cal. 382.) It is not necessary to consider whether or not the provision allowing a discretionary power to admit without a new examination in some cases is constitutional. Conceding, but not deciding, that such provision is void, it comes clearly within the rule above stated, and does not affect the other provisions of the act under which the petitioner is held in custody.

There are no other points that require notice.

The petition is denied and the petitioner remanded to the custody of the chief of police of the city and county of San Francisco.

Van Dyke, J., Angellotti, J., McFarland, J., Henshaw, J., and Lorigan, J., concurred.

Rehearing denied.

---

[1] 52 Am. St. Rep. 149.