[Crim. No. 1974.  In Bank.—March 24, 1916.]

# THE PEOPLE, Respondent, v. T. F. RATLEDGE, Appellant.

MEDICAL PRACTICE ACT—INFORMATION—CHARGE OF SINGLE OFFENSE.— An information charging "the crime of practicing medicine without a certificate from the medical board," followed by the averment that the crime was "committed as follows: That the said T. F. Ratledge . . . , did willfully and unlawfully practice, attempt to practice, and advertise and hold himself out as practicing a system and mode of treating the sick and afflicted in the state of California, without then and there having a valid, unrevoked certificate authorizing him to practice a system or mode of treating the sick and afflicted in this state from the Board of Medical Examiners of the State of California," sufficiently charges a violation of section 17 of the Medical Practice Act, and is not open to the criticism that it charges many offenses because any one of the acts or omissions averred and conjunctively pleaded would suffice as the basis of an information.

ID.—EVIDENCE AS TO "TREATMENT"—CONCLUSION OF WITNESS.—On the trial for such offense, the testimony of witnesses that they had received "treatments" from the defendant was properly admitted. Such testimony was not an unwarranted conclusion of the witness that certain acts constitute a "treatment."

ID.—EVIDENCE OF PRIOR OFFENSE—INTENT AND MOTIVE—REMOTENESS. Evidence of occurrences upon the occasion of a visit of a witness to the defendant's office nearly six months before the time set forth in the information, was competent as tending to show the intent and motive of the defendant in the commission of the acts charged in the information, and was not too remote.

ID.—PRACTICING WITHOUT LICENSE—EVIDENCE OF WANT OF EXAMINATIONS BY BOARD OF MEDICAL EXAMINERS.—The only question with which the court was concerned on such trial was whether or not the defendant was practicing without a license, and evidence tending to show that the state board of medical examiners held no examinations for practitioners such as the defendant is properly excluded.

ID.—DRUGLESS HEALERS—REASONABLENESS OF ACT—EXTENT OF EXAMINATIONS.—The requirement of the act that such subjects as histology, elementary chemistry, toxicology, physiology, elementary bacteriology, and pathology shall be included in the examinations to be taken by applicants for certificates to practice as drugless healers, does not render the act unreasonable as to them.

ID.—LEGISLATIVE DISCRETION—NECESSARY SCIENTIFIC EDUCATION.— It is the duty of the legislature to determine the amount and qual-

CLXXII Cal.—26

ity of scientific education necessary for the individual to possess before he may hold himself out to practice the healing art. Unless the legislative conclusion upon that subject is obviously unfair, the courts will not interfere with the exercise of its discretion.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Frank R. Willis, Judge.

The facts are stated in the opinion of the court.

Ingall W. Bull, for Appellant.

U. S. Webb, Attorney-General, Robert M. Clarke, Deputy Attorney-General, and Ray E. Nimmo, for Respondent.

MELVIN, J.—The main questions involved in the appeal herein from the judgment are the same as those which arose in the appeals in *People* v. *Jordan, ante,* p. 391, [156 Pac. 451]. Some exceptions appearing in the record on this appeal which are not discussed in the opinion in that case we will here briefly consider them.

The information is attacked upon the ground that it charges "the crime of practicing medicine without a certificate from the Medical Board," the contention being that no such crime is denounced by the law. It is true that the statute does not contain the quoted words but clearly they are used merely for purposes of general description of the offense as they are followed by the averment that the crime was "committed as follows: That the said T. F. Ratledge on the 30th day of October, 1914, at, and in the County of Los Angeles, State of California, did willfully, and unlawfully practice, attempt to practice and advertise and hold himself out as practicing a system and mode of treating the sick and afflicted in the state of California, without then and there having a valid, unrevoked certificate authorizing him to practice a system or mode of treating the sick and afflicted in this state from the Board of Medical Examiners of the State of California." This sufficiently charges a violation of section 17 of the Medical Practice Act, [Stats. 1913, p. 734], and is not open to the criticism that it seeks to impute many offenses to defendant because any one of the acts or omissions averred and conjunctively pleaded would suffice as the basis of an information. (*Peo-*

ple v. *Frank,* 28 Cal. 507; *People* v. *Harrold,* 84 Cal. 567,
[24 Pac. 106]; *People* v. *Gosset,* 93 Cal. 641, [29 Pac. 246];
*People* v. *Gusti,* 113 Cal. 177, [45 Pac. 263]; *Commonwealth*
v. *Eaton,* 15 Pick. (Mass.) 273.) This information does not
fall within the rule declared in *People* v. *Plath,* 166 Cal. 227,
[135 Pac. 954].

The appellant complains of the court's refusal to strike out
parts of certain answers of witnesses who stated that they had
received "treatments" from him. It is regarded by him as
an unwarranted conclusion of a witness that certain acts
constitute a "treatment." The objection is without force.
Doubtless the witnesses used the word in its well-understood
signification, that is, the application of some supposed cura-
tive agency to the person seeking relief. A witness was
permitted over defendant's objection to detail the occurrences
upon the occasion of a visit by her to his office nearly six
months before the time set forth in the information. The
objection was upon the usual grounds of incompetency, etc.,
and that the time was too remote. The evidence was com-
petent as tending to show the intent and motive of the de-
fendant in the commission of the acts charged in the informa-
tion, and it was not too remote. Courts are allowed a wide
discretion with respect to the periods of time covered by
such testimony.

The defendant offered to prove that the state board of
medical examiners held no examination for chiropractors, but
the court sustained objections to questions tending to develop
that fact. The proffered proof was properly rejected. The
only question with which the court was concerned was whether
or not the defendant was practicing without a license. The
fairness or unfairness of the board of medical examiners was
not a question before the court. If the defendant was unlaw-
fully excluded from examination that was something which
he might have remedied by application to a court of equity—
but it would be no defense to a charge of practicing without
a license.

Other objections are based upon the giving of certain in-
structions and failure to give others. Without discussing
them in detail, we think it sufficient to say that they are de-
void of merit. The jury was fully and fairly instructed.

It is stated in one of the briefs of appellant that the learned
judge of the trial court was biased because the record dis-

closes the use by him of the following language: "I under-stand from the evidence in this case that Dr. Ratledge was of the opinion notwithstanding he was repeatedly warned that this was a violation of the law, that—" (we reproduce the quotation as it appears in the brief). Commenting upon this partial quotation the writer of the brief uses the following language:

"There is absolutely not one word of evidence in the record to show that the *defendant had been repeatedly warned* that he was violating the law, hence no evidence on which to predicate such a statement; so it follows, that there were motives, bias, influences or statements other than such as might have been created by anything which occurred at the trial which actuated the trial judge in his actions toward the defendant."

The quotation, wrenched from its context is not properly illustrative of the occurrence and the comment by the writer of the brief was wholly unwarranted. The court's statement was made after the trial when the appellant appeared for sentence. A part of the colloquy was as follows:

"The Court: I understand from the evidence in this case that Dr. Ratledge was of the opinion, notwithstanding he was repeatedly warned that this was a violation of the law, that—I think the transcript in the lower court shows that he courted this arrest in order to have this law tested.

"Mr. Bull: Yes, to determine whether or not that does constitute a violation of the law, the acts which he did. He didn't endeavor to conceal any of the acts which he did, and as your Honor saw in this trial, there was no attempt on our part to conceal the acts which he did, but he did not believe that constituted a violation of the law. It was not any desire to violate the law, but he didn't believe those acts constituted a violation of the law."

The court was speaking of facts disclosed by the record of the preliminary examination—not of facts appearing from the record of the trial in the superior court. Counsel at that time readily conceded the correctness of the court's belief that the defendant was a willing martyr to the cause of securing judicial interpretation of the Medical Practice Act. His willingness now to attribute bias and prejudice to the court, because of the utterance of a conceded truth, and his

attempt to support his contention by a truncated quotation, do not meet with our approval.

All of the other questions of any moment which are raised on this appeal have been answered by the opinions in the case of *People* v. *Jordan* cited above, but because of the earnest insistence of counsel in all of these cases upon one point, perhaps further attention may with profit be given to it. The argument is made that because the law includes such subjects as histology, elementary chemistry, toxicology, physiology, elementary bacteriology, and pathology in the examinations to be taken by applicants for certificates to practice as drugless healers, it is unfair, because these are standard courses of study in the preparation of physicians and surgeons, but are not needed in the art of those who intend to alleviate human suffering by manual and mechanical means only. The answer is that to the legislature is committed the duty of determining the amount and quality of scientific education necessary for the individual to possess before he may hold himself out to practice the healing art. Unless the legislative conclusion upon that subject is obviously unfair we may not interfere, for the scope of the police power is very extensive, and the discretion of the legislature in exercising such power is very broad. It is not for us to substitute our discretion and judgment for those of the legislature, although we may say in passing that the wisdom of some of the requirements for practice mentioned above would strongly appeal to us, even if we did possess a broader power than is given to us. For example, the importance of a knowledge of toxicology will be evident to everyone. Without it the drugless practitioner might apply his manipulations to one suffering from the effects of a poison, and might continue his efforts until time for the successful administration of an antidote had passed. All that we have said in the Jordan case about diagnosis applies to this branch of the discussion. Many years ago this court, speaking through Mr. Chief Justice Wallace, announced the rule that in matters relating to public health the scientific correctness of the legislative body in imposing certain restrictions deemed to be for the public good is, generally speaking, not open to review. (*Johnson* v. *Simonton*, 43 Cal. 242–249.) To be sure in that case there was a collateral attack upon a statute and not a direct one, but we cite the authority to illustrate the unwillingness of

courts to interfere with legislative discretion exercised in
the passage of laws pertaining to public health.    In *Ex parte
Lacey,* 108 Cal. 326–329, [49 Am. St. Rep. 93, 38 L. R. A.
640, 41 Pac. 411], the rule of *Johnson* v. *Simonton* was given
application in a proceeding on *habeas corpus* involving a di-
rect assault upon the constitutionality of a law designed for
the promotion of public hygiene.    The state has the right to
specify and lay out a course of study, and to establish a
standard of efficiency.    In *Ex parte Gerino,* 143 Cal. 412–417,
[66 L. R. A. 249, 77 Pac. 166], this court sustained a pro-
vision of the medical law requiring that as one of the steps
toward securing a certificate to practice medicine and surgery,
the applicant must produce a diploma issued by a medical
college, the requirements of which should be equal to those
prescribed by the Association of American Medical Colleges.
In *Ex parte Whitley,* 144 Cal. 167–177, [1 Ann. Cas. 13, 77
Pac. 879], this court approved the Dental Practice Act, which
prescribed among other things certain elementary educational
qualifications in those seeking certificates to practice dentistry.
It was held that the necessity for education, its nature, and
its extent depend primarily upon the judgment of the legis-
lature which may not be controlled by the courts, so long as
it is reasonably exercised.    And it is not necessary that to
be within reason a required study must be one pertaining
immediately to the branch of the healing art which an ap-
plicant for a license wishes to practice.    For example, the
algebra studied by a dental practitioner in his high-school
course may not bear directly upon his practice, but the study
of mathematics is undoubtedly one of the means of culture
by which his mind is better fitted to cope with professional
problems, and to acquire a mastery of stomatology sufficient
for its practice by him without danger to the public.    Further
illustrations we think are not necessary to direct attention
to the exercise of the power of legislative bodies in prescrib-
ing educational tests which must be met and passed by those
seeking to secure licenses to practice medicine and other pro-
fessions over which the state exercises control.    Again let us
call attention to the words of Mr. Justice Holmes, quoted in
the Jordan case: "The plaintiff in error professes, as we
understand it, to help certain ailments by scientific manipula-
tion affecting the nerve centers.    It is intelligible therefore
that the state should require of him scientific training. . . .

For a general practice science is needed." (*Collins* v. *Texas,* 223 U. S. 288–296, [56 L. Ed. 439, 32 Sup. Ct. Rep. 286].) We conclude that there is nothing unreasonable in the curriculum prescribed by the Medical Practice Act for those wishing to secure licenses to practice the art of drugless healing.

No other questions raised in the briefs require attention. The judgment is affirmed.

Henshaw, J., Sloss, J., Shaw, J., Lawlor, J., and Angellotti, C. J., concurred.