[Civ. No. 18905. Second Dist., Div. Three. July 14, 1952.]

ADOLPH OOSTERVEEN et al., Appellants, v. BOARD OF MEDICAL EXAMINERS et al., Respondents.

Macbeth & Ford, Norman Macbeth and Patrick H. Ford for Appellants.

Edmund G. Brown, Attorney General, Bayard Rhone, Deputy Attorney General, and J. Robert Meserve for Respondents.

SHINN, P. J.—Plaintiffs Oosterveen and Olson are graduate naturopaths and chiropractors. Neither has been licensed to practice in California. They brought this action against Board of Medical Examiners of the State of California, State Board of Chiropractic Examiners, Board of Osteopathic Examiners of the State of California, and Edmund G. Brown, as Attorney General of the State of California, to secure a declaration that they have a right to practice naturopathy without securing a license from any of defendant boards. They appeal upon a settled statement from a judgment that they take nothing by their action.

The claims asserted by plaintiffs are the following: (1) The practice of naturopathy is beneficial and not harmful; (2) naturopaths are subject to prosecution for practicing without a license; (3) they cannot, under existing laws, obtain a license to practice naturopathy; and (4) they are thus made the subject of unjust and unconstitutional discrimination. Defendants do not dispute that the practice of naturopathy by qualified persons is beneficial and harmless; they concede that naturopaths are subject to prosecution if they are unlicensed, but they deny that under existing laws naturopathists cannot become licensed, contending that licensees of the Board of Medical Examiners, the Board of Osteopathic Examiners, and the Board of Chiropractic Examiners, may practice the system of naturopathy. And they contend further that while the practice is regulated it is not prohibited.

Physicians' and surgeons' licenses are issued under the Medical Practice Act (Bus. & Prof. Code, ch. 5, div. 2, §§ 2000-2497). The Board of Osteopathic Examiners, under

the Osteopathic Law (2 Deering's Gen. Laws, Act 5727 [1944 ed.]), issues licenses which authorize the holders to practice medicine and surgery, the same as licensed physicians and surgeons. The holders of these licenses may also use "any and all other methods in the treatment of diseases, injuries, deformities or other physical or mental conditions." The Board of Chiropractic Examiners, under the Chiropractic Act (2 Deering's Gen. Laws, Act 4811), issues licenses which entitle the holders "to practice chiropractic in the State of California as taught in Chiropractic schools or colleges; and, also, to use all necessary mechanical and hygienic and sanitary measures incident to the care of the body, but shall not authorize the practice of medicine, surgery, osteopathy, dentistry or optometry or the use of any drugs or medicines now or hereafter included in materia medica."

There is no law under which plaintiffs may be licensed as naturopaths. Brief reference to earlier laws will disclose how the present situation arose. Under Statutes 1907, page 252, licenses were issued for the practice of medicine and surgery, osteopathy and "other systems or modes of treating the sick or afflicted." Under Statutes 1909, page 418, holders of certificates from the Board of Examiners of the Association of Naturopaths of California, incorporated August 8, 1904, and who had been practicing naturopathy, were given the right to continue in the practice. Thereafter, until 1949, drugless practitioners were licensed by the Board of Medical Examiners, by the Board of Osteopathic Examiners after it was created (2 Deering's Gen. Laws, Act 5727 [1944 ed.]), and licenses were also issued under the Chiropractic Law, an initiative measure approved November 7, 1922 (2 Deering's Gen. Laws, Act 4811 [1944 ed.]). The classification of drugless practitioner was abolished by the addition of section 2232 of the Business and Professions Code (Stats. 1949, ch. 233), and by section 2497 of the Business and Professions Code, added by Statutes 1943, chapter 1047, the Board of Osteopathic Examiners also was deprived of authority to issue drugless practitioners' certificates. These enactments preserved to holders of drugless practitioners' certificates the right to practice. It was stipulated that there are 13 naturopaths' licenses issued by the Medical Board, 129 drugless practitioners' licenses issued by the Medical Board and 179 by the Osteopathic Board; also that there are some 5,600 chiropractors in the State of California. The court found that naturopathy is practiced in California by more than 1,000 persons, almost all of whom are

licensed chiropractors who practice chiropractic and who have displayed somewhere within their offices a certificate or degree of Doctor of Naturopathy.

The trial court concluded from the findings that "any duly licensed practitioner may employ naturopathic methods if he so desires" and "it cannot be maintained that the requirement that one who prefers naturopathy as a healing method must be licensed as a physician and surgeon, osteopath or chiropractor, is unreasonable, arbitrary or unconstitutional"; also, "that the practice of naturopathy in the State of California without being properly licensed in one of the healing arts is in violation of Business and Professions Code, § 2141 and is thereby prohibited."

Plaintiffs contend the court was in error in these conclusions; that they cannot obtain any license under which they can practice naturopathy without qualifying and passing an examination for a physician's and surgeon's certificate, and that as a matter of regulation it would be unreasonable to require a drugless practitioner to equip himself with the required education and training in medicine and surgery in order to practice naturopathy. Defendants agree with the conclusion of the trial court that the methods of naturopathy may be employed by licensed chiropractors and they say that to require naturopaths to obtain physicians' and surgeons' or chiropractors' licenses in order to practice their system is merely regulation, and not unreasonable.

A distinction must be drawn between the practice of naturopathy and the use of drugless methods of healing. Naturopathy is a system which is deemed by those who practice it to be self-sufficient, that is to say, that although naturopaths do not treat all diseases or injuries, they use only their own methods of treatment, as far as it goes. Whenever the word "naturopathy" is used in the findings or conclusions or in the briefs, with relation to practices permitted by licensees other than naturopaths, we construe it to mean merely the employment of drugless methods commonly used by naturopaths. Section 2137, Business and Professions Code, does not authorize physicians and surgeons to practice "naturopathy" or any other system of drugless healing, but only to use "any and all other methods in the treatment of diseases," etc. The court did not hold that a chiropractor may practice naturopathy, as such, but that he may employ naturopathic methods if he so desires.

The court defined naturopathy as set out below.[1]

The practice of naturopathy, as such, may not be licensed under existing laws, nor may the system be practiced without a license.

Section 2141, Business and Professions Code, reads as follows: "Any person, who practices or attempts to practice, or who advertises or holds himself out as practicing, any system or mode of treating the sick or afflicted in this State, or who diagnoses, treats, operates for, or prescribes for any ailment, blemish, deformity, disease, disfigurement, disorder, injury, or other mental or physical condition of any person, without having at the time of so doing a valid, unrevoked certificate as provided in this chapter, is guilty of a misdemeanor." And section 2395: "The use by the holder of any certificate of any letter, letters, word, words, or term or terms either as prefix, affix or suffix indicating that he is entitled to practice a system or mode of treating the sick or afflicted for which he is not licensed in this State constitutes unprofessional conduct within the meaning of this chapter."

■ One holding a license as a "Drugless Practitioner" may not use the title "Dr." or "N.D." (*Dare* v. *Board of Medical Examiners*, 21 Cal.2d 790 [136 P.2d 304]). ■ A physician and surgeon or a chiropractor, unless licensed as a naturopath, may not use the title "Naturopath" or "N.D." There was no evidence that physicians and surgeons use these titles, but it was in evidence that the Board of Chiropractic Examiners conducts a system of inspection and does not permit chiropractors to use either of these titles, although if they have diplomas as naturopaths they may display them.

■ The use of natural methods of healing is not forbidden by law. Physicians and surgeons, osteopaths, chiro-

[1] "That Naturopathy is a mode of healing that attempts to restore and maintain health by the use of light, air, water, clay, heat, rest, diet, herbs, electricity, massage, Swedish movements, suggestive therapeutics, chiropractic, magnetism, physical and mental culture, and does not advocate the use of drugs and medicines but does advocate the use of 'dietary supplements' which said dietary supplements include all substances found in nature, including those substances found in herbs, the earth and animal tissues, whether raw or refined, and it does not include the use of surgery or the penetration of the tissues; it is practiced in the State of California by persons who were licensed as naturopaths by the Board of Medical Examiners in 1909 and have thereafter been continuously licensed as such thereafter; in addition, it is practiced in the State of California by over 1,000 persons, almost all of whom are licensed chiropractors and who practice chiropractic but who have displayed somewhere within their offices a certificate or degree of Doctor of Naturopathy."

practors and all those who hold licenses as drugless practitioners may use them. It is of common knowledge that nature is the indispensable healing agency and that practitioners of medicine and surgery, osteopathy and chiropractic make use of the curative qualities of light, air, water, rest, diet, and physical and mental culture, in connection with the agencies peculiar to their several systems of healing.

The several medical practice acts have never had application to the treatment by prayer or the practice of religion, but with this exception they have forbidden the practice of any of the healing arts by those who were unlicensed. Plaintiffs, being unlicensed, may not, under the present law, practice at all. Even if they should become licensed as physicians and surgeons or chiropractors, they could not practice naturopathy in its true sense, inasmuch as they could not use the title "Naturopath" or "N.D." nor hold themselves out as such. But they must become licensed either as physicians and surgeons (which now includes osteopaths) or as chiropractors in order to employ their methods.

We do not discover in this situation a sound basis for the claim of unreasonable discrimination with respect to these plaintiffs. The court found that plaintiff Oosterveen holds degrees of doctor of chiropractic and doctor of naturopathy from schools not accredited by the Board of Chiropractic Examiners. In this respect he is in the same unfortunate position as the holder of a degree in any other school of healing from an institution not approved in California.

Plaintiff Olson produced a certificate as set out below[2]

---

[2] "April 24, 1951
"To Whom It May Concern:

"This is to certify that Frederick H. Olson completed a four year course at the National College of Drugless Physicians. Dr. Olson began his course of study on September 22, 1947 and the "Doctor of Naturopathy" degree was conferred on September 8, 1950. Subjects and hours are as follows:

| SUBJECTS: | HOURS: |
| --- | --- |
| Anatomy, including Dissection | 648 |
| Histology and Embryology | 120 |
| Chemistry, including Toxicology | 252 |
| Bio-Chemistry | 36 |
| Physiology | 336 |
| Pathology | 336 |
| Bacteriology | 96 |
| Hygiene and Sanitation | 72 |
| Manipulative Technic | 408 |
| Abnormal Psychology | 72 |
| Obstetrics and Gynecology | 120 |

[Note continued on next page.]

from a college that is approved by the Board of Chiropractic Examiners. The educational requirements of that board are as set out below.[3]

The evidence as to courses of study in the basic sciences and drugless healing in naturopathic colleges, is that contained in the certificate of plaintiff Olson, and in the testimony of several naturopaths, all of whom had had at least 4500 hours of study in various colleges. It will be seen from a comparison of the curriculum of a college of naturopathy with the requirements for study in the basic sciences prescribed by the Chiropractic Act, that there is slight difference between the two. Defendants say that the two courses of study are substantially the same, and this, we suppose, upon the assumption that the courses of study of the better naturopathic schools are comparable to those of the National College of Drugless Physicians in Chicago, Illinois, which plaintiff Olson attended, and those mentioned by the other witness.

It is somewhat difficult to understand why one who has received the same education in the basic sciences in a naturo-

| SUBJECTS: | HOURS: |
|---|---|
| Diagnosis: Symptomatology, X-Ray, Physical, Clinical ond Laboratory Technic | 718 |
| Eye, Ear, Nose and Throat | 48 |
| Dermatology | 48 |
| Orthopedics | 48 |
| Pediatrics | 48 |
| First-Aid and Minor Surgery | 48 |
| Physio-Therapy | 96 |
| Massage, Hydro-Therapy and Colon Therapy | 72 |
| Phyto-Therapy | 48 |
| Advanced Therapeutics | 72 |
| Dietetics | 72 |
| State Board Review | 120 |
| Principles and Practice of Naturopathy, including Clinic | 830 |
| Total sixty minute hours | 4764 |

[signed] Registrar M. De Voto

NATIONAL COLLEGE OF DRUGLESS PHYSICIANS''

[a]''Anatomy, including embryology and histology ......... 800 hours
Physiology ............................................. 320 hours
Biochemistry, inorganic and organic chemistry ......... 320 hours
Pathology and bacteriology ............................ 480 hours
Public health, hygiene and sanitation ................. 160 hours
Diagnosis, pediatrics, dermatology, syphilology, serology, X-ray and psychiatry ................. 720 hours
Obstetrics and gynecology ............................. 160 hours
Principles and practice of chiropractic, physiotherapy, dietetics and office procedure ................. 1040 hours

TOTAL 4000 hours''

pathic college as a student of chiropractic would receive in a chiropractic college, should be required to pursue further study in chiropractic in order to obtain a license under which he would be privileged to employ drugless healing methods without resorting to manipulation of the joints. But this was a matter for the Legislature, and we think it was within the legislative power to require naturopaths to acquire the education and pass the examination demanded of applicants for chiropractors' licenses, and that there is no undue discrimination against them.

The courts cannot properly undertake the legislative and administrative functions that are involved in the regulation of the practice of medicine, surgery and drugless healing. They cannot absolve naturopaths from the duty of complying with licensing statutes which establish not only standard qualifications for applicants to practice, but also the procedure for testing their qualifications. In *Gamble* v. *Board of Osteopathic Examiners*, 21 Cal.2d 215 [130 P.2d 382], the court considered a legislative requirement that an osteopath during each year must complete a minimum of 30 hours of professional educational work approved by the board, and upheld the regulation, although osteopaths had the same educational qualifications as other practitioners and yet were the only ones of whom the additional study was demanded. The court said [p. 219] : "It is generally recognized, however, that the power to regulate the treatment of disease is an elastic one and that regulations may vary according to the schools or methods of practice so long as they entail no unreasonable discrimination. (*In re Rust*, 181 Cal. 73 [183 P. 548] ; *People* v. *Jordan*, 172 Cal. 391 [156 P. 451] ; *People* v. *Ratledge*, 172 Cal. 401 [156 P. 455] ; *Ex parte Gerino*, 143 Cal. 412 [77 P. 166, 66 L.R.A. 249] ; *People* v. *Mills*, 74 Cal.App. 353 [240 P. 296] ; *People* v. *Chong*, 28 Cal.App. 121 [151 P. 553] ; *Bohannon* v. *Board of Medical Examiners*, 24 Cal.App. 215 [140 P. 1089] ; *Crane* v. *Johnson*, 242 U.S. 339 [37 S.Ct. 176, 61 L.Ed. 348] ; see cases cited in 16 A.L.R. 709.) In the light of the foregoing cases the requirement in question in the present case cannot be regarded as unreasonable. *In re Rust, supra,* held that the Optometry Act of 1913 (Stats. 1913, p. 1097) forbidding osteopaths but not physicians and surgeons, from practicing optometry without a license from the State Board of Optometry, did not violate article I, section 21 of the state Constitution."

In *McNaughton* v. *Johnson,* 242 U.S. 344, 345 [37 S.Ct. 178, 61 L.Ed. 352, 353], the court considered the question of the claimed invalidity of an act of the California Legislature (Stats. 1913, ch. 598, p. 1097) which prohibited the practice of optometry by any unlicensed person. The plaintiff, McNaughton, was a regularly graduated ophthalmologist practicing her profession in Los Angeles; she did not use drugs or surgery; but it was indispensable in her practice that she measure the powers and range of human vision by procedures which were within the definition of optometry in the act. She questioned the constitutionality of the act in that it would have required her to become licensed as an optometrist, claiming that she was thus denied the right to practice a profession that was in itself lawful and in no sense harmful to the community. The statute was upheld under the general power of the Legislature to regulate the practice of medicine. There is much authority to the same effect. It would serve no useful purpose to discuss the authorities relied upon by plaintiffs. Only one of them, *Smith* v. *State Board of Medicine,* in the District Court of the Third Judicial District of Idaho, in upholding the claims of a naturopath reached a conclusion contrary to our own. The holding is not in harmony with the California decisions.

During all the time when licenses were issued to drugless practitioners, standards of education in the basic sciences were in effect, and yet the several laws under which such licenses were issued did not define the scope of practices permitted under various systems of drugless healing. Although naturopaths' licenses have never been issued except to those who qualified under the statutes of 1909 above mentioned, the regulatory acts have not prohibited the use by all licensed practitioners of the natural methods of healing commonly employed by naturopaths, in connection with and supplementary to other licensed methods of treatment. When we speak of the right to use the methods commonly employed by naturopaths we do not adopt the trial court's definition of naturopathy in all respects. Some of the practices mentioned might in some circumstances be regarded as the use of drugs or medicine, which, of course, is prohibited to chiropractors.

Section 2146, Business and Professions Code, reads in part: "Nothing in this Chapter [5] shall be construed so as to discriminate against any particular school of medicine or surgery, or any other treatment" etc. Plaintiffs contend that section 2141, *supra,* is in conflict with the above and does constitute discrimination against naturopaths and other drugless

practitioners. The provision against discrimination has been the law, substantially in its present form, since 1907. ■ It applies primarily to administration of the act and does not modify other specific sections, such as section 2141, which do not call for interpretation. ■ Moreover, no illegal discrimination against naturopaths has been shown.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 11, 1952, Edmonds, J., and Schauer, J., were of the opinion that the petition should be granted.