[L. A. No. 18450. In Bank. Nov. 2, 1942.]

WILLIAM O. GAMBLE, Petitioner, v. BOARD OF OSTEO-PATHIC EXAMINERS OF THE STATE OF CALI-FORNIA et al., Respondents.

Roscoe R. Hess for Petitioner.

Paul Vallée and Charles E. Hobart as Amici Curiae on behalf of Petitioner.

John L. Brannely for Respondents.

TRAYNOR, J.—Petitioner has brought this proceeding in mandamus to compel the respondent board to issue a receipt for the payment for the calendar year 1943, of the annual tax and registration fee required by section 2496 of the Business and Professions Code.

Section 2493 of the Business and Professions Code, as amended in 1941 (Stats. 1941, chap. 945) requires each person licensed by the osteopathic board to pay an annual tax and registration fee and to submit therewith satisfactory evidence that he has completed during the preceding year a minimum of 30 hours of professional educational work approved by the board. Petitioner is a graduate of an osteopathic school and holds a physician and surgeon certificate issued in 1934, which authorizes "the holder to use drugs or what are known as medical preparations in or upon human beings and to sever or penetrate the tissues of human beings and to use any and all other methods in the treatment of diseases, injuries, deformities, or other physical or mental conditions." (§ 2137, Business and Professions Code.) He tendered the annual fee for the calendar year 1943 as required by section 2496 of the Business and Professions Code but declined to submit evidence of the performance of 30 hours of professional educational work. He contends that since holders of physician and surgeon certificates issued by the Board of Medical Examiners are not required to do annual educational work for the renewal of their licenses, the requirement of such work of holders of physician and surgeon certificates issued by the Board of Osteopathic Examiners violates, in addition to article I, section 21 of the California Constitution, the Osteopathic Act, which cannot be amended by the Legislature because it was adopted by initiative without special provision for its amendment. (Cal.Const., art. IV.)

Between 1913 and 1922 all physicians and surgeons were licensed by the Board of Medical Examiners. Graduates of all schools recognized by the medical board, whether osteopathic, homeopathic, eclectic or allopathic, were entitled to take the physician and surgeon's examination if they met the

prescribed conditions. The Osteopathic Act created a Board of Osteopathic Examiners and gave it jurisdiction, formerly residing in the Board of Medical Examiners, over graduates of osteopathic schools. The act was intended to effect administrative changes only, and made no substantive changes in the standards of education and examination for the physician and surgeon certificate. When the Osteopathic Act was adopted the rights and duties attached to the physician and surgeon certificate did not vary according to the kind of school from which the holder graduated. Petitioner argues that since the Osteopathic Act made the Medical Practice Act applicable to graduates of osteopathic schools such rights and duties remain invariable. The Legislature, however, is not committed to a uniform policy in this regard. There is no provision in the Osteopathic Act limiting its power to change the standards for receiving or holding a physician and surgeon certificate. The argument submitted to the voters in support of the act set forth that it left the Legislature free to change the standards of education and examination. The act itself demonstrates the care with which its framers guarded that freedom and made the act exclusively administrative in character: "All persons who are graduates of osteopathic schools and who desire to apply for any form of certificate mentioned or provided for in the state medical practice act, approved June 2, 1913, and all acts amendatory thereof, shall make application therefor, to said board of osteopathic examiners and not to the board of medical examiners of the State of California. The board of osteopathic examiners in respect to graduates of osteopathic schools, applying for any form of certificate mentioned or provided for in the state medical practice act, approved June 2, 1913, *and all acts amendatory thereof,* is hereby authorized and directed to carry out the terms and provisions of the state medical practice act, approved June 2, 1913, *and all acts amendatory thereof, and all laws hereafter enacted prescribing and regulating* the approval of schools, *the qualifications of applicants for examination for any form of certificate,* the applications for any form of certificate, the admission of applicants to examinations for any form of certificate, the conduct of examinations, *the issuance of any form of certificate,* the collection of fees from applicants, the collection of an annual tax and registration fee, the compilation and issuance of a directory, *the revocation of any form of license or certificate,* the prosecution of persons who attempt to prac-

tice without a certificate, *and all other matters relating to the graduates of osteopathic schools, holding or applying for any form of certificate or license.* Every applicant to said board of osteopathic examiners for any form of certificate shall pay to the secretary-treasurer of the board the fees prescribed for such application by said state medical practice act, approved June 2, 1913, *or any acts amendatory thereof or laws hereafter enacted.* Said board of osteopathic examiners shall, in respect to all the matters aforesaid, relating to graduates of osteopathic schools, applying for or holding any form of certificate or license, take over, exercise and perform all the functions and duties imposed upon and heretofore exercised or performed by the board of medical examiners of the State of California under the provisions of the state medical practice act, approved June 2, 1913, *and acts amendatory thereof.* The provision of said state medical practice act, approved June 2, 1913, *and acts amendatory thereof* are hereby declared to be applicable to said board of osteopathic examiners in respect to all of the aforesaid matters and *all other matters now or hereafter prescribed by law* relating to the graduates of osteopathic colleges holding or applying for any form of certificate or license. In no other respects than as herein provided shall the jurisdiction, duties or functions of said board of medical examiners of the State of California be in any wise limited or changed; nor shall the board of osteopathic examiners have any power or jurisdiction over the graduates of any other than osteopathic schools. From and after the time of the organization of the board of osteopathic examiners said board of medical examiners of the State of California shall have no further jurisdiction, duties or functions with respect to graduates of osteopathic schools holding or applying for any form of certificate or license and the said jurisdiction, duties and functions shall be assumed and performed by said board of osteopathic examiners." [Italics ours.] (Stats. 1923, p. xciii; Deering's Gen. Laws, 1923, Act 5727; Osteopathic Act, § 2.)

Every reference in the foregoing act to the Medical Practice Act is followed immediately by a phrase including all acts amendatory thereof. The act, moreover, specifically contemplates "laws hereafter enacted" affecting persons applying for or holding the physician and surgeon or other certificate, including laws "regulating . . . the issuance of any form of certificate . . . the revocation of any form of license

or certificate . . . and all other matters relating to the graduates of osteopathic schools, holding or applying for any form of certificate or license.'' The only limitation in the act upon legislation on these matters is that the administration thereof in relation to graduates of osteopathic schools be by the Board of Osteopathic Examiners. So long as the respective jurisdictions of the Board of Medical Examiners and Board of Osteopathic Examiners are not disturbed, the Legislature remains as free to impose varying requirements on osteopaths and other practitioners after the adoption of the Osteopathic Act as before.

The contention that the 1941 amendment to section 2493 of the Business and Professions Code violates article I, section 21 of the California Constitution is based on the theory that since osteopaths must meet the same educational requirements as other practitioners and receive the same certificate they cannot be made subject to additional requirements not imposed upon the others. It is generally recognized, however, that the power to regulate the treatment of disease is an elastic one and that regulations may vary according to the schools or methods of practice so long as they entail no unreasonable discrimination. (*In re Rust,* 181 Cal. 73 [183 P. 548]; *People* v. *Jordan,* 172 Cal. 391 [156 P. 451]; *People* v. *Ratledge,* 172 Cal. 401 [156 P. 455]; *Ex parte Gerino,* 143 Cal. 412 [77 P. 166, 66 L.R.A. 249]; *People* v. *Mills,* 74 Cal. App. 353 [240 P. 296]; *People* v. *Chong,* 28 Cal.App. 121 [151 P. 553]; *Bohannon* v. *Board of Medical Examiners,* 24 Cal.App. 215 [140 P. 1089]; *Crane* v. *Johnson,* 242 U.S. 339 [37 S.Ct. 176, 61 L.Ed. 348]; see cases cited in 16 A.L.R. 709.) In the light of the foregoing cases the requirement in question in the present case cannot be regarded as unreasonable. *In re Rust, supra,* held that the Optometry Act of 1913 (Stats. 1913, p. 1097) forbidding osteopaths but not physicians and surgeons, from practicing optometry without a license from the State Board of Optometry, did not violate article I, section 21 of the state Constitution. The opinion set forth a history of the distinctions that the Legislature has made at various times between practitioners of osteopathy and other practitioners. Thus for many years different licenses were issued to osteopaths than to physicians and surgeons with different rights and duties attached to the respective licenses. Although the certificates as well as the educational requirements for graduates of osteopathic schools and graduates of medical

schools may now be the same the Legislature is as free to return to different certificates and educational requirements as it was to abandon them.

The petition for writ of mandate is denied.

Gibson, C. J., Shenk, J., Edmonds, J., and Carter, J., concurred.

Petitioner's application for a rehearing was denied November 30, 1942. Curtis, J., and Edmonds, J., voted for a rehearing.