[Civ. No. 15926. Second Dist., Div. Two. Nov. 20, 1947.]

WILLIAM BARTOSH, Respondent, v. BOARD OF OSTEO-PATHIC EXAMINERS OF THE STATE OF CALIFORNIA, Appellant.

J. Robert Meserve for Appellant.

Maddox & Vaughn and Jack O. Goldsmith for Respondent.

MOORE, P. J.—The question for decision is whether the Board of Osteopathic Examiners is required to use the services of a hearing officer at the trial of a physician accused of unprofessional conduct.

On September 16, 1946, petitioner was accused of unprofessional conduct, to wit, a violation of section 2377 of the Business and Professions Code which declares it to be unprofessional conduct for a physician in any way to aid or abet the procuring of a criminal abortion.* With a copy of the accusation petitioner received a notice that a hearing thereon would be had before the Board of Osteopathic Examiners on October 25, at a place in Los Angeles designated "for the purpose of revoking petitioner's license." Thereupon petitioner filed with the board his notice of defense and request for a hearing.

The board having failed to appoint a hearing officer to preside over such hearing as provided by sections 11500 to 11528 of the Government Code, and having threatened to proceed with the hearing without first having appointed a hearing

---

*This section is a part of article 13, division 2, chapter 5, dealing with the revocation of licenses.

officer, the petitioner, acting on his belief that the board would proceed with such trial and render a judgment adverse to him, sought to have the superior court issue its writ of prohibition commanding the board ''to desist from any further proceedings in said action.'' Having admitted the declarations of the petition and having alleged that sections 11500 to 11528 do not apply to the Board of Osteopathic Examiners insofar as they pertain to the use of hearing officers by administrative boards, the answer alleged that the initiative act which created appellant prohibits the board from appointing a hearing officer. The court below by its judgment commanded appellant to desist from further proceedings until it shall have complied with such code provisions insofar as they relate to the appointment of the hearing officer referred to in the last-mentioned code sections. The sole purpose of this appeal is to determine the validity of such judgment. A scrutiny of pertinent statutes and a constitutional provision leaves assurance of its correctness.

By initiative measure adopted November 7, 1922, a self-sustaining Board of Osteopathic Examiners consisting of five members was created. By its provisions the board is ''directed to carry out the terms and provisions of the state medical practice act, approved June 2, 1913, and all acts amendatory thereof, and all laws hereafter enacted prescribing and regulating the approval of schools, the qualifications of applicants for examination for any form of certificate . . . shall . . . take over, exercise and perform all functions and duties imposed upon and heretofore exercised or performed by the board of medical examiners . . . under the provisions of the state medical practice act . . . and acts amendatory thereof. The provisions of said medical practice act . . . and acts amendatory thereof are hereby declared to be applicable to said board of osteopathic examiners in respect to all of the aforesaid matters . . . now or hereafter prescribed by law relating to the graduates of osteopathic colleges.'' (Stats. 1923, p. xxv; 2 Deering's Gen. Laws, Act 5727, § 2, p. 2138.)

In 1945, pursuant to a popular demand for improvement in the procedure of administrative boards the Government Code was amended by the enactment of sections 11500 to 11528 inclusive.* Section 11502 provides that any of the 37 agencies (including the medical as well as osteopathic examiners)

---

*These sections comprise chapter 5, part 1, division 3, title 2, dealing with "Administrative Procedure."

enumerated in section 11501 "requiring full-time hearing officers for the purposes of this act has power to appoint them for the particular agency. Each hearing officer shall have been admitted to practice law in this state for at least five years immediately preceding his appointment." Other sections provide for an accusation to be in writing, service thereof, respondent's request for a hearing, the board's privilege to proceed in 15 days if the accused fails to send to the board a written request for a hearing (11503); procedure of the accused after service and his right to a hearing conditioned on his filing a notice of defense (11506). Section 11512 provides: "(a) Every hearing in a contested case shall be presided over by a hearing officer. The agency itself shall determine whether the hearing officer is to hear the case alone or whether the agency itself is to hear the case with the hearing officer. (b) When the agency itself hears the case the hearing officer shall preside at the hearing, rule on the admission and exclusion of evidence, and advise the agency on matters of law; the agency itself shall exercise all other powers relating to the conduct of the hearing but may delegate any or all of them to the hearing officer."

Also, in 1945, the Legislature amended the State Medical Practice Act by so revising the language of section 2360 of the Business and Professions Code† as to require that "the proceedings under this article [article 13, division 2, chapter 5] shall be conducted in accordance" with the Government Code (§§ 11500 et seq.), and by conferring upon "the board all the powers granted therein." Section 2364 of the same code was also amended to provide that no action shall be taken against "the holder of any certificate" until the board follows the provisions of sections 11500 to 11528.

The contention of appellant is that the above-cited provisions of both the Government Code and the Business and Professions Code are void for the following reasons: (1) section 1 of article IV of the Constitution provides that "No act . . . adopted by the people at the polls under the initiative provisions of this section shall be amended or repealed except by a vote of the electors, unless otherwise provided in said initiative measure"; (2) the acts of the Legislature in adopting sections 11500 et seq. of the Government Code and in adopting sections

---

†This code was adopted in 1937 "consolidating and revising the law regulating and protecting private business and licensed professions and callings and penalizing violations thereof."

2360 and 2364 of the Business and Professions Code violated the above-quoted constitutional inhibition; (3) the only amendments to the State Medical Practice Act of 1913 which are binding upon appellant are those enacted prior to the adoption of the Osteopathic Act; (4) since the above-cited code provisions were not enacted until 1937 and 1945, they violate section 1 of article IV and are therefore not binding upon appellant.

The answer to such contentions is found in the Osteopathic Act itself. Section 2 thereof (Stats. 1923, p. xciv; 2 Deering's Gen. Laws, Act 5727, p. 2138) provides that the provisions of the Medical Practice Act of June, 1913, and acts amendatory thereof are made applicable to the Board of Osteopathic Examiners in respect to "all of the aforesaid matters and all other matters now or hereafter prescribed by law" relating to licensed osteopathic graduates. From the language of the Osteopathic Act it was the clear intent of the electors that the State Medical Practice Act of 1913 should be made applicable to osteopathic practitioners as well as to medical doctors; that the phrase "acts amendatory thereof" is made applicable to the osteopathic examiners "in respect to all of the aforesaid matters and all other matters now or hereafter prescribed by law relating to the graduates of osteopathic colleges holding . . . any form of certificate or license." From such language it cannot be inferred that the framers of the Osteopathic Act were seeking any special privilege for osteopathic practitioners or purposed to avoid the application of the Medical Practice Act. To reason so would be to fly in the face of the initiative act itself. This conclusion is supported by the arguments made by its supporters during the campaign of 1922, for the adoption of the Osteopathic Act. They inveighed against the unfairness of the administrators of the State Medical Practice Act who "arbitrarily refused to examine any more osteopaths for physicians and surgeons licenses," and declared: "we cannot get justice from the medical doctors. They are competitiors of osteopathic physicians and surgeons. . . . The only issue is fair and intelligent administration. *The present physician and surgeon law is all right.* Its administration is all wrong. The law is non-partisan. Its administration is deadly partisan."

From the language of the act, then, as well as from the sentiment of its proponents, it is a fair deduction, if indeed it is not inescapable, that the only provisions of the Osteopathic

Act which are not to be disturbed by legislation are those which prescribe its administration. So long as an amendatory statute does not alter the initiative act by attempting to frustrate its administration by osteopathic physicians such amendments are not violative of the inhibitions of the cited constitutional section. ■ The appointment of a hearing officer and the provisions for an intelligible procedure (§§ 11500 to 11528) do not in the slightest degree deprive the board of the privilege of making any decision in the conduct of its affairs. By section 11512 the board is required to exercise all powers at a hearing except that of ruling upon the admissibility of evidence. ■ The hearing officer is needful for the purpose of conducting all hearings after such fashion as will safeguard the legal rights of those concerned. His sole power is to determine legal questions that may arise upon the offer of or objection to evidence or that might otherwise arise in the conduct of the board's business. His functions in no respect transgress the authority of the board which is vested with the exclusive power to adopt rules to effectuate the provisions of the act. An administrator of any business requires the service of legal counsel to the end that he may avoid the pitfalls which inhere in the complexities of the modern state. That this is the universal voice is attested by the personnel who sit at the tables of directors of commercial institutions as well as in the midst of administrative, quasi-public boards in every community in the Union. The employment of such technical expert does not signify that any power of the board which he advises is transferred to him. His office is merely to give expression to the existing state of the law of which the layman has but a casual knowledge. By reason of the important if not paramount interests delegated to the administrative tribunal the participation of a lawyer in its deliberations as well as in the conduct of its affairs would appear indispensable. Such necessity was impressed upon the Legislature as a means not only of preventing injustices but also of lessening the burdens cast upon the courts in reviewing the proceedings of administrative boards.

■ As the organ of sovereignty the Legislature possesses the inherent power to authorize improvements in the procedure of an administrative board which is obliged to deal with the vested interests of citizens. It should do so unless distinctly forbidden by the organic law. In this regard appellant's attacks upon the new statutes are not to be disdained.

It contends that the initiative act in adopting the existing medical practice act could not by such method adopt "laws hereafter enacted." By this it means amendments to the Medical Practice Act that might be enacted in the future. (See *In re Opinion of the Justices,* 239 Mass. 606 [133 N.E. 453, 454].) ■ Indeed, it is the law that an act which adopts by reference the whole or a portion of another act means the law existing at the time of the adoption, and does not include subsequent additions or modifications of the statute so adopted unless it does so by express language or strongly implied intent. (*Vallejo & N. R. R. Co.* v. *Reed Orchard Co.,* 177 Cal. 249, 254 [170 P. 426] ; *People* v. *Crossley,* 261 Ill. 78 [103 N.E. 537, 540] ; *Crohn* v. *Kansas City etc. Co.,* 131 Mo. 313 [109 S.W. 1068, 1070] ; *Savage* v. *Wallace,* 165 Ala. 572 [51 So. 605, 607] ; *Culver* v. *People,* 161 Ill. 89 [43 N.E. 812, 814] ; *City of Charlston* v. *Johnston,* 170 Ill. 336 [48 N.E. 985, 986] ; *Town of Cicero* v. *McCarthy,* 172 Ill. 279 [50 N.E. 188, 190] ; *Knapp* v. *City of Brooklyn,* 97 N.Y. 520, 525; *Darmstaetter* v. *Maloney,* 45 Mich. 621 [8 N.W. 574, 576] ; *In re Main Street,* 98 N.Y. 454, 457.) Also, see *In re Burke,* 190 Cal. 326, 328 [212 P. 193], which intimates the nullity of a statute purporting to adopt future laws.

■ However, inasmuch as the language of the Osteopathic Act in attempting to adopt future enacted laws as to specified matters must have referred to procedural and not to substantive law, there is no violation of the "initiative" concept by the Legislature's enactment of procedural amendments. ■ Therefore, the power of the Legislature is not frustrated by section 1 of the Osteopathic Act which empowered the Board of Osteopathic Examiners to "adopt such rules as may be necessary to enable it to carry into effect the provisions of this act." ■ Since the right to use the power to adopt rules is permissive and not mandatory, the board is bound to act with discretion in adopting any rule in conflict with the Medical Practice Act which, in the matter of disciplining licentiates, is the law governing osteopathic physicians and the Board of Osteopathic Examiners. (Deering's Gen. Laws, Act 5727, § 2, second, fourth and fifth sentences.) ■ Therefore, since that part of the Medical Practice Act which deals with the trials of osteopathic practitioners is merely procedural, the enactment of sections 2360 and 2364 of the Business and Professions Code was not contrary to the provisions of the initiative act itself or to the inhibitions of

section 1 of article IV of the Constitution. It follows that the Legislature possessed the power to modify all existing rules for the procedure of appellant or to enact a totally new procedure for any of the 37 agencies specified in section 11501.

That the lawmakers had in mind that osteopathic physicians are to be disciplined according to the State Medical Practice Act is evidenced by the report of the judicial council to the governor and the Legislature under date of December 31, 1944, wherein (p. 153) appears the following: "Board of Osteopathic Examiners. . . . No change is required since the amendments relating to the Board of Medical Examiners will bring proceedings for the revocation, suspension or denial of osteopathic physicians and surgeons' licenses, within the Council's proposals." On page 12 of the council's report it is emphasized that by reason of the terms used and their definitions in section 11500 the specification of the powers that may be delegated is unnecessary. On page 20 it is pointed out (1) that the improved procedure does not deprive the agency of its authority and (2) that the agency may reserve to itself any powers other than those of passing upon the admissibility of evidence and of giving legal advice to the board. Withal, it must be borne in mind that the Legislature is without power to amend the substantive provisions of the Osteopathic Act since an initiative statute can be amended only by a vote of the electors "unless otherwise provided in said initiative measure." (Const., art. IV, § 1.)

 Appellant argues that it is precluded by section 102, Business and Professions Code, from "allowing such a hearing officer to assume any of the duties imposed upon appellant." That section does not apply to appellant. It was enacted for the purpose of enabling the Director of the Department of Professional and Vocational Standards to take over the duties of any board created by an initiative act "under the same conditions and in the same manner as provided in this code for other boards of like character."

Appellant invokes the principle embodied in the ancient maxim, to wit: *Potestas delegatus non delegandus potest.* It is argued that since (1) the act requires the board to exercise all the functions and to perform all the duties imposed upon and heretofore exercised by the Board of Medical Examiners under the State Medical Practice Act, and (2) since it authorizes the board to adopt rules that may be necessary to enable it to effectuate the provisions of the act, legislative

action directing appellant to use hearing officers is an unauthorized interference with the board which receives its powers directly from the people. From this pronouncement and the provision of the initiative act that appellant "shall have authority to take evidence in any matter cognizable by it" the conclusion is derived that the Legislature has no power to limit such authority or to compel appellant to delegate it to another. While appellant's argument has in the main been answered by the foregoing discussion, it may here be emphasized that section 11512 provides that a hearing officer must preside over every hearing and rule upon the admission of evidence, but that the agency itself shall exercise all other powers relating to the conduct of the hearing. The presence of the hearing officer is not to prevent the board from taking any competent and relevant evidence. None of its lawful powers is either taken away or abridged by having unlawful evidence excluded from the board's consideration. Nor does the presence of such presiding officer deprive the board of the power to make final decision.

While the question here involved has not been presented to the appellate courts since the enactment in 1945 of the procedural law (§§ 11500 et seq., and §§ 2360, 2364, *supra*), the sentiment of the Supreme Court with reference to the power of the Legislature to enact rules for the regulation of appellant and its constituency is indicated in the decision of *Gamble* v. *Board of Osteopathic Examiners*, 21 Cal.2d 215 [130 P.2d 382]. Doctor Gamble sought by mandamus proceeding to compel the board to issue to him a receipt for the annual tax and registration fee required by section 2496 of the Business and Professions Code. Section 2493 at that time required each osteopathic practitioner to pay an annual tax and registration fee and to submit therewith satisfactory evidence that during the preceding year he has completed a minimum of 30 hours of professional work approved by the board. In declining to submit such evidence with the payment of his fee he contended that since medical doctors are not required to do annual educational work for the renewal of their licenses the requirement made of licentiates of the osteopathic examiners violates not only section 21 of article I of the Constitution* but also the "Osteopathic Act which cannot be

---

*"No special privileges or immunities shall ever be granted which may not be altered, revoked, or repealed by the legislature; nor shall any citizen, or class of citizens, be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens."

amended," citing article IV of the Constitution. In its decision denying the mandate the Supreme Court emphasizes (1) that all acts amendatory of the medical practice act govern osteopathic physicians pursuant to the initiative act; (2) that so long as the respective jurisdictions of the boards of the medical and osteopathic doctors are not disturbed the Legislature is free to impose varying requirements on both classes of practitioners; (3) that the power to regulate the treatment of disease is elastic, and regulations may vary so long as they entail no unreasonable discrimination.

Inasmuch as the legislative enactment of the new procedural law in no respect violates either the cited constitutional section or the Osteopathic Act the judgment should be and it is affirmed.

McComb, J., and Wilson, J., concurred.