[No. F003696. Fifth Dist. Mar. 22, 1985.]

AMERICAN NATIONAL BANK, Plaintiff and Appellant, v.
FRANK PARKER PEACOCK et al., Defendants and Respondents.

**COUNSEL**

Jory, Peterson & Sagaser, John E. Peterson and Christine A. Goodrich for Plaintiff and Appellant.

No appearance for Defendants and Respondents.

**OPINION**

**WOOLPERT, J.**—In this case we examine legislation increasing the rate of interest on judgments and conclude the clear language calling for its effective date in January 1982 was meant to be January 1983.

In September of 1979, a judgment was entered against appellant, American National Bank (hereafter American National). Interest on this judgment was set at 7 percent per annum from March 14, 1977, to the date of the judgment. Thereafter, the rate would remain the same until the judgment was paid. Judgment was affirmed in this court, and a remittitur was issued.

In September of 1983, American National received a " 'Memorandum of Credits, Accrued Interest and Costs After Judgment.' " The memorandum requested interest after September 1979 be set at 10 percent. Later that month, American National also received a writ of execution demanding payment of the above interest at a rate of 10 percent.

American National was partly successful in reducing interest from the 10 percent demanded. A motion to quash execution of the writ was filed. After a hearing on the motion in October 1983, the court issued a minute order and an order after the hearing on the motion.

In the order, interest was set at 7 percent from the date of judgment until December 31, 1983. Thereafter, interest was set at the 10 percent rate; however, this order was amended. Interest was then set at 7 percent only until December 31, 1981, and at 10 percent thereafter. Peacock, defendant below, had successfully argued the effective date of the 10 percent rate, pursuant to section 685.010 of the Code of Civil Procedure,[1] was January 1, 1982, rather than January 1, 1983, the position taken by American National.

American National timely appealed and filed a brief in support thereof. Peacock has not responded.

### Effective Date of Section 685.010

■ As below, American National argues on appeal that section 685.010, which changed the interest rate in such cases from 7 to 10 percent, became effective on January 1, 1983. If so, the court should not have imposed an interest rate of 10 percent beginning on January 1, 1982, as was done in the amendment to the amended order.

At first blush, the question presented appears so straightforward that a simple answer should be quickly forthcoming. Section 685.010, as originally added to the Code of Civil Procedure, provided as follows: "SEC. 3. Section 685.010 is added to the Code of Civil Procedure, to read:

"685.010. (a) Interest accrues at the rate of 10 percent per annum on the amount of a judgment remaining unsatisfied.

"(b) The Legislature reserves the right to change the rate of interest provided in subdivision (a) at any time to a rate of not less than 7 percent per annum and not more than 10 percent per annum regardless of the date of entry of the judgment or the date any obligation upon which the judgment is based was incurred. The change in the rate of interest may be made applicable only to the interest that accrues after the operative date of the act that changes the rate." (Stats. 1982, ch. 150, § 3, p. 495; see also Stats. 1982, ch. 150, p. 493.)

Section 6 of chapter 150 provided: "SEC. 6. This act governs the rate of interest on a judgment entered on or after January 1, 1982, and the rate of interest on and after January 1, 1982, on a judgment entered before January 1, 1982." (Stats. 1982, ch. 150, § 6, p. 496.) As a result, if read literally,

---

[1]All statutory references are to the Code of Civil Procedure unless otherwise indicated.

as was done by the trial court in this case, section 685.010 is retroactive to January 1, 1982.

In the typical case, statutes become effective based upon the date of enactment: "(c)(1) Except as provided in paragraph (2) of this subdivision, a statute enacted at a regular session shall go into effect on January 1 next following a 90-day period from the date of enactment of the statute and a statute enacted at a special session shall go into effect on the 91st day after adjournment of the special session at which the bill was passed.

"(2) Statutes calling elections, statutes providing for tax levies or appropriations for the usual current expenses of the State, and urgency statutes shall go into effect immediately upon their enactment." (Cal. Const., art. IV, § 8, subds. (c)(1) and (c)(2).)

The legislation enacting section 685.010 was signed by the Governor on April 6, 1982, and filed with the Secretary of State on the same date. (Stats. 1982, ch. 150, p. 493.) In the usual case, since the section does not come within the provisions of paragraph (2) of subdivision (c) of section 8 of article IV, its effective date would have been January 1, 1983, the January 1 next following the 90-day period after the statute's enactment.

At least superficially, the Legislature made it clear that a certain effective date was intended. However, an internal inconsistency appears when each section of the chapter is examined. While stating the new rate, the Legislature also sought to preserve its legislative discretion, subject to constitutional limits, by reserving the right to make future changes in the rate, even as to preexisting judgments. It also stated the familiar rule that such changes would be prospective only, thus avoiding constitutional arguments over vested rights. Nevertheless, without stating any reason for making an exception, it proceeded to make this change retroactive one year. Because the usual rule was expressly noted, and there was no statement of reasons for an exception, it is suggested an incorrect date was inadvertently included in the legislation. Substantial precedent permits us to reach that conclusion.

Petitioners in *Silver* v. *Brown* (1966) 63 Cal.2d 841 [48 Cal.Rptr. 609, 409 P.2d 689], sought by writs of mandate to secure reapportionment of both houses of the Legislature. Legislation with an enactment sequence analogous to that in the present case was before the court. A bill had been passed and signed by the Governor. Certain errors were discovered while the Legislature was still in session. Another bill was passed to correct the errors, but unfortunately, it included additional pension benefits for the legislators affected by the reapportionment. As a result, the Governor refused to sign the second bill; therefore, it did not go into effect. Nevertheless, in the

unsigned second bill, the Legislature had stated an intent which was unmistakable.

Although courts ordinarily do not engage in "construing" statutes which are clear on their face, "[t]he literal meaning of the words of a statute may be disregarded to avoid absurd results or to give effect to manifest purposes that, in the light of the statute's legislative history, appear from its provisions considered as a whole." (*Silver, supra,* 63 Cal.2d at p. 845.) Because the errors were clearly proven by affidavits of legislative employees, and because the Legislature had agreed on the corrections to the first bill by its passage of the subsequent but unsigned legislation, the court construed the law in accordance with the legislative intent expressed in the unpassed bill, even though certain aspects substantially conflicted with the words originally used.

On two occasions in this case, Senator Raines successfully moved for an opinion of the Legislative Counsel to be printed in the Senate Journal. The preenactment opinion stated the effective date should be read to be January 1, 1983, contrary to the express language in the bill. The following portion of one of those opinions is illustrative: "You have asked if that provision [section 6] would be interpreted literally, so that SB 203 would govern the rate of interest on a judgment entered on or after January 1, 1982, and the rate of interest on or after January 1, 1982, on a judgment entered before January 1, 1982, or would it be interpreted otherwise.

### "Opinion No. 1

"Section 6 of SB 203 would be interpreted so that SB 203 would govern the rate of interest on a judgment entered on or after January 1, 1983, and the rate of interest on and after January 1, 1983, on an outstanding judgment entered before January 1, 1983; that is, '1982,' as used in Section 6 of SB 203, would be interpreted to mean '1983.' " (Ops.Cal.Legis. Counsel, No. 6033 (Mar. 24, 1982) Interest on Judgments, 6 Sen. J. (1981-1982 Reg. Sess.) p. 11020; hereafter cited as Ops.Cal.Legis. Counsel, No. 6033; see also Ops.Cal.Legis. Counsel, No. 17984 (Nov. 2, 1982) Judgment and Prejudgment Interest, 1 Sen. J. (1983-1984 Reg. Sess.) pp. 107-108, hereafter cited as Ops.Cal.Legis. Counsel, No. 17984.) In each opinion, a lengthy legal analysis was also provided by the Legislative Counsel.

Similarly, subsequent to enactment of chapter 150, the Legislature indicated on two occasions its intent that section 685.010 become effective on January 1, 1983. Approval of the first of these expressions of intent followed closely on the heels of the first opinion of the Legislative Counsel. "SEC. 186. It is the intent of the Legislature, if this bill is chaptered, that

Sections 682.1 and 685.010 of the Code of Civil Procedure, as amended and added, respectively, by Chapter 150 of the Statutes of 1982 shall become effective on January 1, 1983 and shall remain operative until July 1, 1983, at which time they shall be repealed as provided by Section 1 of Assembly Bill 707." (Stats. 1982, ch. 497, p. 2221, approved by the Governor and filed with the Secretary of State on July 12, 1982; see also *id.*, at pp. 2133-2134.)

The second occurred in almost identical language when the Legislature drafted an amended version of section 685.010. (Stats. 1982, ch. 1364, § 5, p. 5236.) The amendment was to supersede the version in chapter 150 and become operative on July 1, 1983. (Stats. 1982, ch. 1364, §§ 1 & 2, p. 5070.) This amendment was approved by the Governor and filed with the Secretary of State over a month *before* the second opinion of the Legislative Counsel was written. (Compare Stats. 1982, ch. 1364, p. 5070, with Ops.Cal.Legis. Counsel, No. 17984, *supra,* at p. 107.)

The amendment operative July 1, 1983, is the current version of section 685.010. It provides as follows: "(a) Interest accrues at the rate of 10 percent per annum on the principal amount of a money judgment remaining unsatisfied.

"(b) The Legislature reserves the right to change the rate of interest provided in subdivision (a) at any time to a rate of less than 10 percent per annum, regardless of the date of entry of the judgment or the date any obligation upon which the judgment is based was incurred. A change in the rate of interest may be made applicable only to the interest that accrues after the operative date of the statute that changes the rate." (§ 685.010; Stats. 1982, ch. 1364, § 2, p. 5080.)

In a very thorough analysis, the Attorney General's office also expressed the opinion that the operative date of section 685.010 was January 1, 1983. (66 Ops.Cal.Atty.Gen. 217, 225 (1983).) The Attorney General was concerned with constitutional problems retroactive application would create where the party against whom the judgment was rendered was a private party rather than the state. The problem arises due to potential impairment of a vested right. (*Id.*, at p. 224; see also Gov. Code, § 9606.)

In both of its opinions, the Legislative Counsel was similarly concerned with constitutional problems arising from retroactive application. (Ops.Cal.Legis. Counsel, No. 6033, *supra,* at pp. 11021-11022; Ops.Cal.Legis. Counsel, No. 17984, at pp. 107-108.) For example, literal interpretation of section 6 of chapter 150 could require reopening closed cases, or application of higher interest rates to judgments already satisfied.

We agree with Legislative Counsel, that such a result would be both unconstitutional and absurd. (Ops.Cal.Legis. Counsel No. 17984, *supra,* at p. 108.) A statute should be judicially construed in such a manner to avoid unconstitutional results. (*Younger* v. *Superior Court* (1978) 21 Cal.3d 102, 113 [145 Cal.Rptr. 674, 577 P.2d 1014]; *In re Rodriguez* (1975) 14 Cal.3d 639, 651 [122 Cal.Rptr. 552, 537 P.2d 384]; *Board of Osteopathic Examiners* v. *Board of Medical Examiners* (1975) 53 Cal.App.3d 78, 85 [125 Cal.Rptr. 619].)

There is a reasonable explanation for the 1982 date appearing in the statute as originally adopted. In 1980 the Law Revision Commission recommended to the Governor and Legislature that legislation changing the interest rate on judgments should be passed. Had such legislation in fact passed the following year, during 1981, its effective date could have been January 1, 1982. (See Recommendation Relating to Interest Rate on Judgments (Jan. 1980) 15 Cal. Law Revision Com. Rep. (1980 pt. I) 7, 14-17.) The legislation was not passed as anticipated; the 1982 date was left in due to oversight.

Further, in a second report by the commission published the same year, the commission stated: "The operative date of the proposed law is deferred until January 1, 1983." (Recommendation Proposing the Enforcement of Judgments Law (Oct. 1980) 15 Cal. Law Revision Com. Rep. (1980 pt. II) 2001, 2009; see also *id.,* at p. 2010.)

We need not explore the mysteries of the legislative process to find why the language in the bill was not changed. The subsequent legislative history excludes the possibility that retroactive effect was intended.

In *Gutierrez* v. *State Ranch Services* (1983) 150 Cal.App.3d 83 [198 Cal.Rptr. 16], the defendant was concerned with Civil Code section 3291, a section upon which section 6 of chapter 150 could have impacted, thereby making it operative on January 1, 1982, rather than January 1, 1983, as well. (*Id.,* at p. 86.) The court concluded section 6 of chapter 150 did not apply to Civil Code section 3291 when section 6 was read in the context of chapter 150 as a whole. (*Id.,* at p. 88.) Unfortunately, the court also stated, in dictum, that section 6 retroactively increased the interest rates on judgments. (*Id.,* at pp. 88-89.) We disagree for the reasons stated.

We have previously cited the November 2, 1982, opinion of Legislative Counsel. The analysis of the *Gutierrez* court also relies on the same opinion to support its conclusion on the section 3291 issue. (*Id.,* at p. 88, fn. 6.) However, on the section 685.010 issue the counsel's opinion is contrary to the dictum in *Gutierrez* and consistent with all of the legislative history we have found.

The judgment is reversed and remanded for recalculation of interest on the judgment pursuant to the opinion expressed herein. Appellant to recover costs on appeal.

Hanson (P. D.), Acting P. J., and Vander Wall, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.